[Cite as *State v. Hunter*, 2021-Ohio-3618.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JESSICA HUNTER | : | Case No. 2021 CA 00023 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:          Appeal from the Court of Common
                                  Pleas, Case No. 20CR0362




JUDGMENT:                         Affirmed




DATE OF JUDGMENT:                 October 8, 2021




APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellee

PAULA M. SAWYERS                          CHRIS BRIGDON
20 S. Second Street                       123 Stirling Way
Fourth Floor                              Etna, OH  43062
Newark, OH  43055

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant Jessica Hunter appeals her March 19, 2021 conviction for unlawful possession of a dangerous ordinance. Plaintiff-Appellee is the state of Ohio.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On July 18, 2020 Heath Police Officer Michael Banks was dispatched to the home of Appellant and Appellant's mother Maria Hunter. Banks was familiar with both women. Upon arrival he heard Appellant yelling at her mother. Banks knocked on the door and heard someone say "come in." Before he could, however, someone locked the door. Banks knocked again. A few minutes later, and after some more commotion inside, someone unlocked the door.

{¶ 3}   Upon entering the residence, Banks saw Maria Hunter kneeling on the floor, her face covered in blood. He further noted Hunter was wearing a halo-type neck brace. At the same time, Banks saw Appellant flee the home through the back door. Knowing another officer was on the way, Banks left Hunter and pursued Appellant.

{¶ 4}   Banks followed Appellant to an adjacent yard and ordered her to the ground. When Appellant failed to comply, Banks physically put Appellant on the ground. Appellant continued to be uncooperative and the assistance of another officer was needed to finally put Appellant in handcuffs.

{¶ 5}   While that was going on, Heath Police Sergeant Zachary Markley arrived to find Hunter on the floor and noted live shotgun rounds on the floor as well. Based on a conversation with Hunter as to whether a weapon was involved in the incident, Markley located a modified Mossberg 590 12-gage shotgun in a back bedroom. He seized the weapon as evidence.

{¶ 6} The shotgun was later submitted to the Central Ohio Regional Crime Lab for operability testing and legality examination. Criminalist/Detective Timothy Elliget performed the testing and examination of the weapon. Elliget determined the shotgun was operable and further that it measured 23.25 inches in overall length with a 14.5 inch barrel length. The weapon was missing the original factory bird's-head style shoulder stock. The weapon had been modified by removing the original shoulder stock and replacing it with a pistol grip. This modification shortened the weapon and made it a prohibited weapon.

{¶ 7} Hunter was transported from the scene to the Licking Memorial Hospital emergency room department where she was seen by Nurse Jessica Davidson. Hunter advised she had been in a domestic altercation with Appellant wherein Appellant hit her in the face and bit her nose. Davidson noted Maria was missing part of one nostril. Later x-rays showed Maria's nose had been broken by the assault.

{¶ 8} As a result of these events, on July 30, 2020, the Licking County Grand Jury returned an indictment charging Appellant with one count of felonious assault, a felony of the second degree, and one count of unlawful possession of a dangerous ordinance, a felony of the fifth degree. Appellant entered pleas of not guilty to the charges and elected to proceed to a jury trial.

{¶ 9} On December 2, 2020, Appellant waived her right to counsel and chose to proceed pro se. Stand-by counsel was appointed and the matter proceeded to trial on March 17, 2021. The day of trial, Hunter became ill and was unable to testify, but the state proceeded without her testimony.

{¶ 10} After hearing the evidence and deliberating, the jury acquitted Appellant of felonious assault, but convicted her of possession of a dangerous ordinance. She was later sentenced to a period of community control and 300 days local incarceration with 242 days credit for time served.

{¶ 11} Appellant timely filed an appeal and the matter is now before this court for consideration. She raises two assignments of error as follows:

I

{¶ 12} "THE LENGTH OF THE SHOTGUN FELL WITHIN THE LIMITS PRESCRIBED BY STATUTE."

II

{¶ 13} "THE STATE FAILED TO SHOW THE DEFENDANT POSSESSED THE SHOTGUN"

{¶ 14} For ease of discussion, Appellant's two assignments of error will be addressed together. Appellant argues her conviction for unlawful possession of a dangerous ordinance is against the manifest weight of the evidence. We disagree.

Standard of Review

{¶ 15} Sufficiency and manifest weight are different legal concepts. "A sufficiency of-the-evidence challenge asks whether the evidence adduced at trial 'is legally sufficient to support the jury verdict as a matter of law.' " *State v. Worley*, Ohio Slip Opinion No. 2021-Ohio-2207, __ N.E.3d __, ¶ 57, quoting *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 219. "In contrast, a manifest-weight challenge 'concerns "the inclination of the *greater amount of credible evidence* * * * to support one side of the issue rather than the other." ' (Emphasis sic.) *State v. Montgomery*, 148 Ohio St.3d 347,

2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990).

{¶ 16} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).  See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).  The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."  *Martin* at 175.

The Conviction

{¶ 17} Appellant was convicted of unlawful possession of a dangerous ordinance a violation of R.C. 2923.17(A). The charge required the state to show Appellant knowingly acquired, had, carried, or used a dangerous ordinance, in this instance a sawed-off firearm.

{¶ 18} A sawed-off shotgun is described under R.C. 2923.11(F):

"Sawed-off firearm" means a shotgun with a barrel less than eighteen inches long, or a rifle with a barrel less than sixteen inches long, or a shotgun or rifle less than twenty-six inches long overall. "Sawed-off firearm" does not include any firearm with an overall length of at least twenty-six inches that is approved for sale by the federal bureau of alcohol, tobacco, firearms, and explosives under the "Gun Control

Act of 1968," 82 Stat. 1213, 18 U.S.C. 921(a)(3), but that is found by the bureau not to be regulated under the "National Firearms Act," 68A Stat. 725 (1934), 26 U.S.C. 5845(a).

{¶ 19} Such a weapon is a dangerous ordnance. See R.C. 2923.11(K)(1).

Appellant's Arguments

{¶ 20} Appellant makes two manifest weight arguments. She first argues the jury lost its way in finding the weapon at issue was a dangerous ordinance because Detective Elligent contradicted himself during his testimony. The testimony of Detective Elligent, however, clearly established the gun was operable and measured less than 26 inches overall. He stated "I measured the barrel length at 14.5 inches and the overall length of the weapon at 23.25." Transcript of trial (T.) at 171.

{¶ 21} Appellant appears to argue the detective's testimony is somehow contradicted because he also stated a bird's head shoulder stock could be added to the weapon rendering it a legal firearm. But according to the record, that was not how the weapon was found, nor how it was presented to Elligent for examination. He testified the weapon had been modified by removing the factory shoulder stock and replacing it with a pistol grip. The modification shortened the overall length of the weapon rendering it a prohibited weapon. T. 173-174. We therefore reject appellant's first argument.

{¶ 22} Appellant further argues the jury's verdict is against the manifest weight of the evidence because the state failed to show she possessed the shotgun. We disagree.

{¶ 23} To "have" a dangerous ordnance within the meaning of the statute, the offender must actually or constructively possess it. *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, 968 N.E.2d 27, ¶ 14 (1st Dist.) To establish constructive

possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist. 2000).

{¶ 24} Heath Police Sergeant Zachary Markley testified he responded to Appellant's home on the day in question. T. 145-146. Upon arrival he observed live shotgun rounds on the floor in the living room where he also found Maria Hunter. T. 152. Based on a conversation with Hunter as to whether there was a gun involved, Markley searched the home for additional evidence and located the shotgun in the back bedroom of the home. T. 154, 160. The original shoulder stock for the weapon was not found in the home and the weapon had been modified by replacing the original stock with a pistol grip. T. 160, 173.

{¶ 25} Appellant's aunt, Christine Scott, testified she helped Hunter on the day of the events in question. She stated Appellant lived with Hunter. T. 108. She further stated when she took Hunter home from the hospital, she found the manufacture's packaging for the shotgun in Appellant's bedroom. T. 114-115.

{¶ 26} During Appellant's cross examination of Markley, Appellant herself appeared to concede the weapon belonged to her. She asked "Okay. * * * is it true you confiscated my rifle box as well? T. 161.

{¶ 27} Based on our examination of the entire record and consideration of reasonable inferences, we find the jury did not lose its way in concluding Appellant possessed the shotgun.

{¶ 28} Appellant's assignments of error are overruled.

{¶ 29} The judgment of the Licking County Court of Common Pleas is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Wise, J., J. concur.

EEW/rw